Good morning, Justices. May it please the Court, my name is Lev Michoni, and I represent petitioners, Tareq Abufayad. I represent him throughout these proceedings. And I would like to try to reserve two minutes of my time for rebuttal. This case presents several interesting issues that I would like to address. But the most novel issue to me, and I believe the one that distinguishes it, is that it is almost entirely based on events that have not happened, but on predictions of future behavior. Regarding the case of inadmissibility, most of the other cases, all of the other cases, where someone was not admitted for engaged or likely to engage in terrorism under Section 212d3, the person had, in fact, been found to be a member or had been engaging in terrorism. By the government's own admission in this case, petitioner had not been. I realize that the statute is likely to engage, but this is a distinguishable issue. In this case, what we have is someone an individual who's law-abiding in his past. There's no record that he hasn't been, who followed all procedures that Congress set out for an immigrant to come to the United States, arrives at the airport, went through all the background checks after going through the consulate, gets stamped, is coming out of the airport, and then he is taken in for questioning, and they take his laptop. And at that point, only does his case emerge. And basically, his entire case, including the cat case, starts from there. When they have the laptop evidence, they then, the government then, of course, brought the profile of Agent Miranda, and it was on the profile and the pictures that the likely to engage in terrorism charge was upheld, not based on his being a member of an organization in the past, a terrorist organization, on account of him engaging in any terrorist acts himself. Counsel, Judge Gould has a question for you. Yes. As I understand this particular part of the statute, it doesn't require explicitly that a person be, a person who's previously engaged in terrorism, or even a member of a terrorist organization, it just says they're likely to engage in a terrorist act if admitted. And I didn't see that there was any constitutional challenge to the statute before us. So, correct me if I'm wrong, but I'm looking at it as if we just look at that literal language of the statute, which is not challenged under the Constitution, then we ask if the record compels the conclusion contrary to what the BIA said. Yes, Your Honor, that is true. And we did not attack the statute as for it being as likely to engage in terrorism being somehow overrun. However, you need to have some probable cause that's reasonable, substantial, probative. And in this case, we have photographs, and we have a profile from an agent, an expert witness. He wasn't involved in any type of investigation with the client, excuse me, with the petitioner. In order to have some probable cause, I would submit to you that there needs to be more, this is a higher standard than it, probable cause is likely to engage, excuse me, probable cause that he is likely to engage, not that he may engage in it. And just photographs and a profile is not probative of anything that he may do in the future, particularly if he hasn't in the past. Okay, counsel, how do you deal with the fact that the expert, Miranda, said he is likely to engage in terrorism? So how do we deal with that testimony contrasted with or taken into account in connection with a standard that asks us if there's substantial evidence? That is, does the record compel the contrary conclusion? Because at least as I read it, there was no objection to Agent Miranda's conclusion being entered in evidence. I believe that he was, I'm sorry, regarding Agent Miranda's testimony being probative of probable cause and it being preponderance of the evidence standard, I would suggest that it's probable cause, excuse me, he, Agent Miranda's testimony was not probative, it was based on facts that weren't even in the record, he had no direct knowledge of it. Some of the opinions that he, some of the facts that he said he based his profile on didn't actually, weren't actually even found by the judge to be reliable, so I would say that. I thought he also said that the immigration judge said he sent him videotapes of all the investigatory interrogations for questioning and that he reviewed those videotapes and that he reviewed the affidavit of Ms. Katz, which gave her slant on what the computer documents in the computer and hard drive showed. So I don't know that we could say that that expert has no knowledge to give an opinion. He said he reviewed the investigation. What's wrong with having an expert do that? I don't think there's anything wrong with having an expert do that. I would just think that it's a little, it takes it up to a higher standard. Probable cause isn't just reasonable suspicion. I would think that this profile in the photographs might take you to reasonable suspicion, but to say that in matter of AH, probable cause, it's the AG found, they were talking about being likely to engage, it is likely and that may be likely. And Yusupov in the Third Circuit, they found that you can't, that the AG was wrong in finding that probable cause that he may be something, probable cause with this statute is that he is likely, not that he may do something. So perhaps it's probable cause that, excuse me, reasonable suspicion that he may do something in the future, but that he is likely right now to do something when he's never done it before. I would say that's a leap to go from nothing to active. How do you explain the fact that he had the name, address and telephone number of a terrorist organization? That actual organization was defunct, even at the time when he came here. But what difference does that make? Because the agency they had was also an agency that gave us scholarships and was scribbled on a piece of paper. And he testified that someone said, you should look up this group when you get there, and see if you can get a scholarship to school. There's no, even if he had called that number, there was no such number listed. The agency was gone. It was designated as a terrorist organization. I mean, it's like I'm coming to San Francisco and somebody says, eat at Joe's Diner. Here's the name, address and telephone number of Joe's Diner. I mean, that's what it appears to be, isn't it? Here's somebody you should contact. And if someone gave you such a piece of paper that said Joe's Diner and you got here and then you learned when you were interrogated that Joe's Diner was actually something other than it purported to be, were you supposed to take your due diligence to go look up what Joe's Diner was before you got on the airplane? But there's no suggestion that this was something, somebody gave him this as a innocent, this is my cousin's college fraternity or something. Well, he testified and he wasn't found to lack credibility that it was an address in his luggage of an organization where they said, oh, they give out scholarships. And I believe that was his testimony that he thought it was an agency that gave out scholarships. I mean, it wasn't called Terrorists, Inc. It had some sort of Friends of Palestine. I mean, if I recall correctly. Association for Palestine. Exactly. And there are many such neutral sounding names that could be anything when he gets here. So I would submit to you if you were actually engaged in acts of homosexuality that he would be up to date on what organizations they're working with and wouldn't have the name of a defunct agency in his bag. He'd have one of someone that was actually really active in doing something. I would say that actually works for a believer. I don't know if that's correct or not. It may be, but here's the question I have for you on a legal point. Is it clear that likely to engage in terrorist activity, I know it's akin to probable cause, but does that definitely mean as a legal matter that it's more probable than not, let's say, more than 50% chance that you'll engage in terrorism? Or would it be sufficient if there was, let's say, a 33% chance or a 40% chance? It's obviously more than a mere possibility. But at what point do you draw the line? That would be nice to know. I'm not sure. It appears that if they took this probable cause theory from criminal law, it seems to me, though, these decisions were using more of a reasonable suspicion standard when they decided them. I know that it's not more likely than not. I know it's not a preponderance of the evidence standard. But I'm not sure where it is, because there have been no cases like this where they've decided what it is. And it's a question of first impression for us. It's a question of first impression. It's likely to engage in terrorist activity means. So what's your position on behalf of your client? That is, could you answer my question? If it was, let's say, 33% likely, is that enough to satisfy it? Or does it have to be 51%? Well, to put a number on it, I would say it has to be more than a reasonable suspicion that something may happen. In all of the probable cause cases and criminal cases, they found something had happened. Or after the investigation, there was something there. So I would suggest it would have to be more than 10%. It would, obviously, it's less than 51%, because that's a whole other standard. I'm not sure where. What about the standard of review? Because we've been arguing or talking about what does the probable cause reasonable likely. But we're actually several steps in back of that. Because trying to get my mind around what that standard is, it looked like we're looking at whether there is substantial evidence that the alien failed to show clearly and beyond doubt that the AG lacked probable cause. Now, how are we to interpret or how do there is substantial evidence of the aliens showing clearly and beyond doubt? How does that factor into the standard of review? That's a very interesting question, one that I was going to get to, is because however you find, let's just assume for this record that there was probable cause found. How does one rebut likely to engage something that never happened and prove a negative? How can one prove, once the burden's shifted to a petitioner, once Agent Miranda came here, how is he to prove that he is clearly and beyond a doubt not going to do something without me bringing the Oracle of Delphi to testify? I'm not sure. How do we apply that? Because we're not even, it's not only that we're looking at the BIA's determination about clearly and beyond doubt, we have to find there's no substantial evidence of that, that we're compelled to overturn the BIA's clearly and beyond doubt determination. How do we apply that here? Well, I'd say that there's not probable cause because just the profiles in the photograph, if Congress wanted to keep people out who are likely to engage in terrorism who had not before, they could just keep anyone out if they wanted to, obviously. They have that power. But once they've decided that they're going to let people in and they're saying that they are likely to engage in terrorism, although they have not before, I'm not sure what evidence we have probable cause when they haven't done something and how you would, I'm not, it's very difficult to prove negative what people are going to do. So you're saying, if I understand you right, are you saying that it's so clear in this case that there's no probable cause that no matter what the standard of review is, we would have to say we're compelled to overturn the BIA's determination. Is that your position? I wouldn't necessarily say, well, in this case, I don't think there's probable cause. But even if there were probable cause, I'm not sure, if we're going to the rebuttal, how a petitioner would get over it. Because if you can put forth almost anything, OK, going back. He came in, he had a valid visa, he passed all of the checks. There was nothing in his background. Then the burden shifted to the government. And the government had to put forth some sort of evidence that was reasonable, probative, substantial enough to get up to probable cause. And you're saying they didn't? I'm saying they did not. Because a profile, it could, if the government wants to say that that's enough, and then there's no way to rebut it in cases where there's no past behavior, then the government could use this, oh, we'll just put forth the profiler in every single case and keep everyone out that they don't like regardless, just based on a profile. You want to save the rest of your time? Yes. Thank you. Good morning, Your Honors, and may it please the Court. Daniel Sumillo on behalf of Attorney General Holder. Mr. Aboufayed appeared at the international border here at San Francisco International Airport. As a result, he is an arriving alien with a burden to prove clearly and beyond doubt that he is, according to the statute, entitled to be admitted and is not inadmissible. The clearly and beyond doubt standard is an extraordinary standard. It is beyond doubt that he is not inadmissible. When he showed up, he had a valid immigrant visa, but that allowed him essentially to do no more than arrive and seek admission at that point. The Immigration and Nationality Act, INA 8 U.S.C. Section 1225A, demands inspection of all people, all aliens seeking to enter the United States, including, in fact, United States citizens. Everybody seeking to enter the United States is inspected. The inspection occurred here, and he apparently, according to Special Agent Manvilde, passed some of the initial inspections, the immigration inspection. And during, while he was still being inspected, and it's sort of an evolving process, the immigration officials looked at his luggage, and they looked at his computer. And at that point, the evidence became clear that he could not prove clearly and beyond doubt. Again, beyond doubt is certainty. He could not prove clearly and beyond doubt he was not admitted. Now, before I get into the evidence that I think the briefs, you know, fairly clearly put forth before the Court, the Supreme Court most recently, in Flores-Montano, a 2004 case, said, the government's interest in preventing the entry of unwanted persons and affects his added zenith at the international border. Certainly, Fourth Amendment jurisprudence from the Supreme Court, and of course, from this Court, upholds that. And this, I think, Judge Yakuta, is the point that you were addressing, is how should this Court look at this case? The Court should look at this as a case where it is Mr. Aboufayed's burden to prove clearly and beyond doubt that he was not inadmissible. Here, the government charged that there were reasonable grounds to believe that he is likely to engage in terrorist activity. The information on his laptop show that he is extraordinarily interested in terrorist activity throughout the United States, excuse me, throughout the world, from Hamas in his native Gaza, to Chechnya, to the attacks on New York and Washington on September 11th. He was asked about these claims. And what did he say? Well, I'm interested in them, it's just sort of the news, and I'm interested in a school project. Well, okay. Mr. Aboufayed's subsequent investigation revealed that he has a degree in computer science. This is not somebody who is a terrorism expert. Now, it is an extraordinarily demanding burden for him to prove that clearly and beyond doubt that he is entitled to be admitted. Could he have done that? Presumably, yes. Had he been a professor of terrorism, he could say, geez, I have all this derogatory or anti-American material because I study terrorism organizations. Presumably, Agent Miranda, the expert in this case, would have good reason to have this kind of information on his computer. Mr. Aboufayed, his answers simply did not remove doubt. Now, he also had, of course, hacking materials, which were burglarious-type tools on his computer. Now, burglarious-type tools speak for itself. These are hacking materials. He had stolen credit card numbers. Yeah, but counsel, let me ask you this. What's in the record that shows us the relationship between having hacking programs and stolen credit card numbers in his computer and the likelihood that he would engage in terrorist activity? It's not a likelihood standard, Your Honor, with respect to the 51% burden, which I think likelihood tends to suggest. It's- Well, okay, well, let's put that aside. Let's have you answer the question I'm giving you. Like I said earlier, I'm not sure it's more probable than not, or if likely means 33%, but what do the credit cards and the hacking, credit card numbers and the hacking programs have to do with application of that standard? Agent Miranda, the expert in this case, I think made it clear in two respects. One is, in his testimony, he suggested that, Mr. Aboufaya, there are reasonable grounds to believe he is likely to engage in terrorist activity with respect to material support to Hamas. Now, Mr. Agent Miranda also made clear that there is nothing, not one item that says, okay, here's how we know this. It is a totality of the circumstances approach, which of course is familiar in the Fourth Amendment jurisprudence, which Congress was drawing upon when it adopted the reasonable grounds standard. Right, but I'm asking, did Agent Miranda in his testimony, which I read, I didn't notice this, did he tie the credit card numbers and the hacking programs to the likely, like, to whether it was likely that Aboufaya would engage in terrorism? I mean, I have some impressions from other cases I've seen of other records of relationships between those things in organized crime or terrorists, but I didn't see that in Miranda's testimony. I don't recall whether Agent Miranda mentioned the hacking programs and the stolen credit cards specifically in his testimony. However, he did make plain that he reviewed the entirety of the record, which presumably, well, which does include the computer results as well as the videos of Mr. Aboufaya's interviews with the agents here in San Francisco. So from that, we can conclude that Mr. Miranda did in fact draw upon those items. And those are- Did the Katz affidavit talk about those items? I simply don't recall. I'm sorry to say, Your Honor. Regardless, even excluding those items, there would still be sufficient evidence to believe that there is reasonable ground to believe, particularly, again, where this case must be viewed in light of Mr. Aboufaya's burden to prove clearly and beyond doubt that he is not inadmissible. You were mentioning that the professor of terrorism or the agent could remove doubt, but what about an average person growing up in this town, which is Hamas-dominated, according to the record? It seems like many of the factors would be analogous to a broad swath of individuals growing up in that area. Would they ever be able to show clearly and beyond doubt no probable cause as you read this section? Theoretically, they could be. A couple of points to that, Judge. Number one, the recent Supreme Court case of Humanitarian Law Project versus Holder demands that the courts give deference to the executive's reasonable determination. So deference is warranted here. Now, this is a case where there was an agent from the Joint Terrorism Task Force trained in terrorism as well as an expert, Special Agent Miranda, who had at least 10 years experience, excuse me, at least nine years experience dealing strictly with Hamas and other Palestinian rejectionist groups. As a result, deference, the executive's deference commanded by the Supreme Court in the, I'll call it the ACLP case, may explain that deference is required here. Now, to answer your more fundamental question, Judge, is yes, it is theoretically possible. There are, of course, as we well know, universities in Gaza and in that part of the world, and theoretically, it could be possible for an alien to come here and explain these points away. Here, however, Mr. Abu Fayed's explanations did the exact opposite. For example, when he was speaking about Sheikh Yassin, who was one of the founders of Hamas, he initially said, well, I respect his religion, but not his politics. Well, what does that mean? Sheikh Yassin is famous for having no differentiation between his politics and his religion. His politics and his religion are the same. They are the destruction, the eradication of Israel. So here, Mr. Abu Fayed, given a chance to explain these points away, actually added to the reasonable ground to believe by making these inconsistent statements. You know, there are, of course, many other factors. The record is voluminous, to say the least, as to the evidence. Counsel, address this point for me, please. I realize that the Congress' power is at its apogee or greatest height when it deals with immigration. And there's no constitutional challenge to this standard. But still, in terms of how we interpret it, it seems somewhat odd to have a statutory term that affects someone a great deal that is based on the likelihood of future contact. So it's sort of like that Tom Cruise movie, Minority Report, where, you know, you're gonna exclude him from the US because he's thinking the wrong things. So how's it, you know, I don't mean you have to comment on that movie, but, you know, don't we have to be cautious in applying, like, the standard of whatever likely means by the fact that this is sort of like a, it's framed by Congress as a thought crime. Or it's framed in terms of likely action, but it's future action. So how does that inform what the standard is? Judge, I appreciate you letting me off the hook for my lack of pop culture knowledge. You know, with respect to this, this is a preventive statute. There's no question about that. And again, the Supreme Court in HLP, albeit in the criminal context, made plain that the material support statute is preventive. Here, the immigration statute is preventive. And we know this from, you know, not only the language of the statute, which is reasonable grounds to believe is, of course, a low threshold, analogous to the probable cause standard, which the Court, of course, decided in Malconde. But we also know from the statutory scheme that Congress set up that this is, you know, he must prove clearly and beyond doubt that he is not inadmissible. Again, this is an extraordinarily high burden that the unadmitted alien must prove. With respect to the constitutional issue, you know, the best analogy I can draw, Your Honor, is from the Fourth Amendment's search context, where any time a police officer, an FBI agent, and what have you, swears out a warrant before a magistrate to go search somebody's house, a closet for drugs, it's predictive. We don't know for certain, and certainty is not required to get that search warrant and to intrude in somebody's home, a Fourth Amendment jurisprudence, Your Honor. Here, we're very different from that in some respects, insofar as we're essentially Fourth Amendment at the border plus an inadmissible or, excuse me, an unadmitted alien. So there is predictive conduct, you know, as to the straight Fourth Amendment, you know, search of a home. And, you know, for that reason, certainly we can, I'd say, comfortably state that there is fourth, you know, yes, it's a predictive statute. And here, Mr. Aboufayed failed to prove beyond doubt that he is not inadmissible. Are there other parts of the immigration laws that use this same or a similar standard about whether somebody's likely to do something? I think there is a statute as respect to, and I apologize, the INA, as you know, is quite broad, a reasonable ground as to narcotics activity, which, as I understand it, does not require a conviction. But if the attorney general has reasonable ground that the alien, and this is somewhat inapp, because I think it has engaged, and again, I'm not totally certain as to this. But, you know, reasonable ground versus reasonable ground to believe. There is some predictive conduct there. In terms of other predictive conduct, at the moment, I'm not quite aware of any, Your Honor. Thank you. But again, if I could, this is, you know, this is, as we learned from HLP, a preventive statute. Completely within Congress's rights to enact the law. On your side of the case, you have a lot going for the government in terms of the standard of review and the fact there's no challenge to the constitutionality of the statute. But on the other side, I guess against you, you have the fact that the IJ did not make a negative credibility determination as to Abu Fayyad. So could you comment on that? What's the significance of that? I get concerned whether the IJs are so worried that we're going to overrule adverse credibility decisions that they write their opinions trying to avoid the issue. But I mean, that is the case here, right? There's no statement that he's not credible. The immigration judge did not make such a determination. However, the statute simply doesn't require it. Your Honor, this is a removal proceeding at this point. The requirement for a credibility determination is typically in the asylum context or within the, you know, whenever an alien seeks an application for relief. So we're not quite there yet at this point. And what I mean specifically is if you look at 8 U.S.C. 1229a, that's 1229 little a, that sets forth the burdens as to the alien that the government have at various points in this procedure. Here, this is a contested removal proceeding. At that point, we know, of course, Kong, you know, the alien has the burden to prove clearly and beyond doubt that he is not inadmissible. However, Your Honor, there is no requirement for a credibility determination there. If we read down in the statute, I believe it's, in fact, I'm not going to cite where it is in the statute because I can't get more specific at the moment. But it's only when the alien is seeking some application for relief from removal that a credibility determination is called for. Similarly- Maybe it's not called for, but if it's not made, are we required to take everything he said as true? Absolutely not, Your Honor. Again, it's not called for, and I think the board's decision makes somewhat clear that these decisions were really, you know, some of these statements were simply not believable. That's taken from the expert's opinion, and from, you know, at one point, I think he stated, you know, maybe I misquoted myself. You know, these are simply, this is, and that was with respect to whether, initially he told the agents that he lived with four well-known Hamas members during the immigration proceedings. He said, well, you know, they might have been Hamas members. It wasn't clear. Maybe I misquoted myself. Therein, without a requirement for credibility determination, it's fairly plain that those portions of his testimony were deemed not credible. So are you saying, no, we don't have to take his testimony as true based on a case or a statute, or just the fact that we haven't ruled on it in the 1229A context? Well, I think the 1229A context makes plain that there simply is no requirement for credibility determination at this stage of the proceedings. So I would refer the court, and I would rely upon that statutory scheme that Congress has set up. It's only, credibility determinations under the statute only come to the fore when the alien is seeking some type of relief. And that simply, at this stage, had not yet happened. You know, and to just dovetail on that, if I may, and I appreciate that my time is well up at this point, and I apologize for that. But it's simply, you know, the court and the board and the IJ can look at that as any civil or criminal case. You know, that's how the evidence ought to be viewed at that point. So no further questions. I'd ask the court to deny the petition. Thank you. Thank you. You have about a minute left. About a minute? I just wanted to state that I actually wanted to bring up the moving minority report, but was afraid that people might not get it. But moving on really fast, I find it interesting that counsel's arguments about the evidence and about the anti-hacking, it really, Agent Miranda did not rely on these factors. This wasn't relied on by the IJ, nor the board. This is something that the government likes to throw in there. But it kind of underscores the point. How could my client, if probable cause was found, rebut it? And counsel said, well, he could do it because, for example, if he was studying terrorism, that would explain why he had the world events on his computer. However, here he is, he just made a, he made mention of the fact he's a computer science expert, yet that's not working to explain away why he would have information about hacking or anti-hacking programs on his computer. So if his word's not to be taken on that, and he can't explain it away by what he's studying, I'm not sure how he would ever meet his burden. I mean, his own example undermines his own argument in that case. Thank you. Thank you. All right, the case of Aboufayad versus Holder is submitted. And we're in recess for the day until tomorrow. Thank you. All rise.
judges: Mahan, Hall, Gould